**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

EURO IMPORT, INC., EURO IMPORT
DISTRIBUTIONS, INC., JSC
CONFECTIONARY FACTORY "NEVA",

*Plaintiffs*,

- against -

ROYAL SWEET BAKERY, INC. and
MIKHAIL YUSIM and JOHN DOE 1-10,

*Defendants*.

Civil Action No.:

**COMPLAINT AND JURY DEMAND**

Plaintiffs, Euro Import Distributions, Inc. ("EID"), Euro Import, Inc. ("Euro Import")

(EID and Euro Import are collectively referred herein as "Euro Import"), and JSC Confectionary

Factory "Neva" ("Neva") (hereinafter collectively, "Plaintiffs") bring this action against the

defendants, Royal Sweet Bakery, Inc. ("Royal Sweet"), Mikhail Yusim ("Yusim"), and John

Doe 1-10 (Royal Sweet, Yusim and John Doe 1-10 are hereinafter collectively referred to as

"Defendants"), and allege as follows:

## NATURE OF THE ACTION

1.        This is an action for trademark infringement, fraud, unfair competition, and other

illegal and wrongful acts brought against Defendants who have imported into the United States,

with an intent to distribute, and are in the process of distributing, diverted "grey market"

confectionary goods that are illegal to sell in the United States.

2.        The illegal and wrongful acts by Defendants are directed at a major manufacturer

of confectionary goods that exports its product to the United States from Russia, and its

exclusive distributor in the United States.  Most troubling, Defendants' acts harm the consumers

who are confused about the true origin of the products and mistakenly believe that they purchase

the highest quality products that they associate with the well-known brand when they, in fact, are buying materially different, inferior, and potentially unsafe products through unapproved distribution channels.

3. Neva is one of the largest manufacturers of marshmallows, fruit candy and pastille sweets in Russia. The type of marshmallows that Neva manufactures is known as "zephyr" and is the style that is particularly popular in the United States among immigrants from the former Soviet Union and Eastern European countries.

4. Neva exports its goods to numerous countries, including the United States.

5. Neva has registered some of its trademarks in the United States. These valid trademarks appear on the products that are imported into the United States.

6. The exclusive importer of Neva's products in the United States is Euro Import Inc. EID, which is part of Euro Import group of companies, distributes Neva's products throughout the United States.

7. Euro Import has developed a reputation among consumers as a reliable, quality-conscious distributor of Neva products that can be trusted to adhere to the highest standards in product handling and quality control. Neva and Euro Import's reputation is presently in danger of being destroyed by the named Defendants, John Does, and their principal who are attempting to import and distribute products that may pose health risks, will likely cause consumer confusion, and have harmed and continue to harm the goodwill of Neva and Euro Import.

8. Defendants have obtained Neva products from sources in Russia that are outside the only distribution channel approved by Neva. In doing so, they are attempting to flood the United States market with products that are not intended for distribution in the United States, have been warehoused in facilities not approved by the Food and Drug Administration, and have

not been transported to the United States under acceptable temperature- and humidity-controlled conditions.

9.      Most troubling, Defendants, without the knowledge and consent of Neva and Euro Import, place counterfeit nutritional labels on the products that they import into the United States that indicate, falsely, that the products were imported by Euro Import when they, in fact, were not.

10.     Finally, as will be further alleged in this Complaint, genuine Neva products that are intended for export to the United States are materially different from diverted Neva products – the so-called "grey market" Neva products.

11.     The material differences render diverted Neva products that Defendants distribute in the United States mislabeled and confusing.  Some of them also raise potential health and safety concerns.

12.     Neva and Euro Import take great care to ensure that the genuine Neva products are shipped to the United States under certain conditions designed to main the safety and integrity of the products.  With diverted Neva products, like the ones sold by Defendants, Neva cannot be assured that such products are shipped and handled under safe conditions.

13.     Defendants' unauthorized importation and subsequent distribution causes, or is likely to cause, consumer confusion, mistake, and deception to the detriment of Neva, Euro Import, as well as consumers.  As a result of Plaintiffs' extensive branding, marketing, sales, and quality control efforts in the United States and around the world, consumers in the United States expect a certain quality, packaging, and overall image from Neva products.  When such consumers encounter the diverted products, which bear certain of Neva's trademarks but are materially different from what U.S. consumers expect, they are likely to be confused and, indeed,

disappointed.  Moreover, diverted Neva products may pose health risks to unknowing and unsuspecting purchasers of diverted Neva products.

14.     Defendants' importation and sales of diverted products cause great damage to Neva and its valuable trademarks.

## PARTIES

15.     Plaintiff Neva is a corporation organized and existing pursuant to the laws of Russian Federation, with its principal place of business in St. Petersburg, Russia.  Neva is engaged in the business of manufacturing and marketing confectionary products.

16.     Plaintiff Euro Import is a corporation organized and existing pursuant to the laws of the State of New York, with its principal place of business in Brooklyn, New York.  Euro Import is the exclusive importer of Neva products into the United States.

17.     Plaintiff EID is a corporation organized and existing pursuant to the laws of the State of New York, with its principal place of business in Brooklyn, New York.  EID is the exclusive distributor of Neva products in the United States.  It markets, sells and distributes Neva products imported through Euro Import throughout the United States.

18.     Defendant Royal Sweet is a corporation organized and existing pursuant to the laws of the State of New York, with its principal place of business in Brooklyn, New York. Royal Sweet is engaged in the business of, among other things, importing, selling, marketing and distributing confectionary products in the United States.

19.     Defendant Yusim, upon information and belief, owns and operates Royal Sweet. Upon information and belief, Yusim resides in Brooklyn, New York, with a principal place of business at 119 49th Street, Brooklyn, New York 11232.  Defendant Yusim exercises control

over Royal Sweet and is a moving, conscious, active force behind Royal Sweet's unlawful conduct.

20.     Defendants John Doe 1-10 are other persons and entities that are involved in the scheme to import, distribute, and sell diverted Neva products but whose identities are presently unknown.

## JURISDICTION AND VENUE

21.     The Court has subject matter jurisdiction over this action under Section 39 of the Trademark Act of 1946 (the "Lanham Act"), 15 U.S.C. § 1121; 28 U.S.C. §§ 1331, 1332, 1338(a), 1338(b), and 1367; 18 U.S.C. §§ 1964 and 1965; and general principles of ancillary and pendent jurisdiction.

22.     The amount of damages at issue exceeds $75,000, exclusive of interest and costs.

23.     The Court has personal jurisdiction over the Defendants because they regularly transact or have transacted business in the Eastern District of New York by, for example, selling diverted Neva goods into the state of New York to consumers in the State of New York.

24.     Venue is proper in the Eastern District of New York pursuant to 28 U.S.C. § 1391(b) and (c) in that a substantial part of the events or omissions giving rise to the claim occurred in this district, and one or more of the Defendants is subject to personal jurisdiction in this district.

## FACTS

A.     *Neva and Euro Import's Business*

25.     Neva is one of Russia's largest manufacturers of marshmallow, fruit candy and pastille sweets.  Neva exports its goods to numerous countries, including the United States.

26.     The type of marshmallows that Neva manufactures is known as "zephyr".

27.     Neva's "zephyr" and other products products are consistently the bestsellers among similar products in the United States.

28.     Neva's products enjoy a worldwide reputation for quality, great taste and attractiveness of their design, and stand out among similar products by other manufacturers. Neva enjoys a particularly strong reputation in the United States among immigrants from the former Soviet Union and Eastern European countries. Neva develops, manufactures, and markets products that are familiar to these immigrants by catering their preferences and tastes that many of them have acquired since early childhood.

29.     Neva has, in cooperation with Euro Import, developed many products specifically for the United States market. These products are attractively and distinctly packaged, are particularly suited to the tastes of U.S. consumers, and comply in all respects with all U.S. laws and regulations. The products that Neva manufactures for the United States market and sells through Euro Import all bear a distinct trademark "Лянеж" (in Russian), "Lyanezh" and "La Niege" (in English).

30.     Neva's products are often the number one choice among consumers who are looking to purchase "zephyr" and other confectionary goods in ethnic stores in the United States. Consumers know that when they choose Neva products, they can be assured they are buying the highest-quality marshmallows and sweets.

31.     Due to the highly perishable nature of Neva's products, it is critical that Neva's products are transported to the United States and stored, after leaving the factory, under very specific temperature- and humidity-controlled conditions.

32.     For over five years, Euro Import has been the exclusive importer of Neva products into the United States and Canada. Neva and Euro Import have signed an exclusive

distributorship agreement whereby Euro Import is named the exclusive distributor of Neva products in the United States and must adhere to the high standards of storage and handling of Neva's products.

33. The nutritional label of Neva's products intended for export to U.S. lists Euro Import as the exclusive distributor of Neva's products.

34. Euro Import works closely with Neva on developing the best ways to market Neva products in the United States. It is instrumental in Neva's efforts to select and present its products for the United States market.

35. Euro Import has spent considerable efforts and made enormous investments of time and money in promoting Neva's products in the United States. Euro Import routinely studies the tastes of United States' consumers and works with Neva to tailor its products accordingly, participates in numerous exhibitions, presentations, sample sales, develops, together with Neva, marketing materials, cultivates relationships with local stores and their proprietors, and advertising Neva products on radio, television, in print and elsewhere. Euro Import has devoted great attention to ensure that Neva products are consistently number-one sellers among similar products.

36. Euro Import is in charge of shipping and importing Neva products into the United States, storage of the products at its warehouse, and transporting them to hundreds of stores that sell them. In doing so, Euro Import adheres to the highest standards developed by Neva that ensure that the products are not exposed to extreme heat and humidity levels, that they have not expired, and are safe for consumers. Euro Import ensures compliance of Neva products with all applicable laws and regulations applicable to food products of this type.

37.    Euro Import handles customer relationships for Neva in the United States.  Euro Import ensures the effectiveness of recalls of Neva products, answers customer questions and addresses their concerns, accepts suggestions from customers and transmits them to Neva, and replaces products for consumers in the rare instances when products do not meet their expectations.

38.    Euro Import ensures compliance with the U.S. Food and Drug Administration ("FDA") labeling and Prior Notice requirements with respect to Neva products.  It works with Neva to ensure that the label properly and conspicuously lists all required information and that the FDA is duly advised prior to the importation of Neva products into the United States.

**B.    *Neva's Trademarks***

39.    Neva is the owner of several of U.S. Trademarks including, among others, the following (collectively referred to as "Neva's Marks"):

     a.  Neva's **ЛЯНЕЖ** trademark was registered on the Principal Register of the United States Patent and Trademark Office on January 28, 2014, as U.S. Registration Number 4,473,080.  A copy of Neva's Registration Certificate Number 4,473,080 is attached hereto as part of **Exhibit "A"**.



     b.  Neva's trademark was registered on the Principal Register of the United States Patent and Trademark Office on

December 31, 2013, as U.S. Registration Number 4,457,040.  A copy of

Neva's Registration Certificate Number 4,457,040 is attached hereto as part of

**Exhibit "A"**.

    c.   Neva has applied for the registration of     **Lyanezh**     trademark

with the United States Patent and Trademark Office on July 2, 2014.  The

application has been assigned serial number 86327566.

    40.    Neva has used Neva Marks and other distinct names and features in commerce in the United States for at least five years.

    41.    Neva has also registered numerous trademarks worldwide.

    42.    The sale of Neva's products in the United States has been tremendously successful in part due to Neva and Euro Import's marketing and promotion of the Neva brand throughout the country.

    43.    Euro Import distributes over 200 tons of Neva goods every year in the United States alone.

    44.    The Neva brand is recognized in the United States and throughout the world as associated with high-quality, great-tasting confectionary goods sourced from ecologically pure ingredients.  Neva goods are sold in grocery stores throughout the United States.

    45.    As a result of Neva and Euro Import's extensive advertising and promotion of Neva's goods in connection with, among other things, the Neva Marks, Neva and Euro Import's widespread and long-running sale of Neva's goods, and the celebrity that the Neva Marks have achieved, confectionary goods manufactured by Neva and distributed by Euro Import have been and are now recognized by the consuming public in the United States and in the trade as originating from a single source: Neva.

46.     Confectionary goods bearing the Neva Marks have come to be known by the purchasing public throughout the United States and abroad as confectionary goods of the highest quality.  As a result, the Neva Marks and the goodwill associated with them are of inestimable value to Neva.

47.     Neva has used and is currently using the Neva Marks in commerce and in connection with its sale of Neva's confectionary goods, and plans to continue such use in the future.

### C.     *Defendants Imported Grey Market Neva Products*

48.     In or about late October 2015, Defendants imported into the United States a large quantity of "grey market" Neva products.

49.     Upon information and belief, Defendants had purchased Neva products from one or more distributors in Russia.  Defendants are now offering these products for sale in the United States and are actively marketing these products.

50.     The Neva products that Defendants have purchased were not authorized by Neva to be exported into the United States.

51.     Upon information and belief, the distributors, from which Defendants purchased these products, were not authorized by the FDA.

52.     Defendants created and placed counterfeit nutritional and packaging label on the diverted Neva products, falsely stating that they were imported and distributed by Euro Import, without Neva's or Euro Import's consent and in violation of the FDA rules and regulations.

53.     The diverted Neva products and genuine Neva products authorized for sale in the United States are materially different.

C.      *Material Differences Between U.S. and Diverted Neva Products*

54.      Defendants acquire Neva products from distributors in Russia in contravention of official and sanctioned distribution channels, and import them into the United States.  In doing so, Defendants violate several FDA regulations, as well as cause consumer confusion and cause permanent damage to Neva's and Euro Import's goodwill and reputation.

55.      Defendants import into the United States the products that are not destined for the United States but are rather intended for domestic consumption in Russia.  The Neva goods destined for the United States and those intended to be sold in other countries are materially different both in terms of packaging, labeling, as well as quality.  Defendants attempt to deceive U.S. consumers that the diverted Neva goods are U.S.-approved products distributed through official distribution channels and in doing so are perpetuating fraud upon consumers and violate FDA laws and regulations.

56.      **Diverted Goods Are Not for Sale in the United States**.  Neva manufactures products for export into the United State and for domestic consumption.  Even though these products are manufactured in the same facilities, these products are different in many respects in terms of handling and packaging.

57.      The first critical difference between the genuine, U.S.-destined Neva products and those that are diverted by Defendants is that the genuine Neva products have, on their factory-manufactured packaging, a designation that the exclusive distributor in the United States is Euro Import.  Diverted Neva products do not have such designation.

58.      Moreover, diverted Neva products bear the legend "Not For Sale in USA" on the packaging.

59.     FDA regulations require that the name, address and phone number of the distributor be prominently featured on imported food products to be distributed in the United States.  The diverted products violate these regulations.

60.     **Defendants Place Counterfeit Labels on Diverted Products**.  To circumvent FDA regulations and deceive consumers, Defendants place counterfeit labels on diverted Neva products.  Without authorization from Neva or Euro Import, Defendants place an almost identical copy the label that Neva places on the packaging bound for distribution through Euro Import and sell the product in circumvention of Euro Import.

61.     Defendants place the counterfeit label in such a way as to hide the true label that was placed by Neva on its products, and that bears a legend "Not For Sale in the United State".

62.     Moreover, the counterfeit label contains different expiration dates than those placed on the original label.  Defendants deceive consumers about the actual expiration date of the products thus introducing potentially unsafe product into the stream of U.S. commerce.  By deceiving consumers into believing that the products come from Euro Import and Neva, Defendants place Neva and Euro Import's reputation at grave risk.

63.     **Diverted Neva Products Are <u>Not</u> Stored and Handled at FDA-Approved Facilities.**  The facilities that manufacture Neva products in Russia, as well as Euro Import's facilities, are all registered with FDA.

64.     Defendants obtain diverted Neva products from distributors in Russia in contravention of the only official Neva distribution channel – Euro Import.  Upon information and belief, the wholesalers, which stored and handled Neva products subsequently sold to Defendants, have never been registered with FDA.

65.     **Defendants Do Not Meet Neva's Standards When Transporting and Handling Neva Products.**  Upon information and belief, Defendants transport and handle Neva products in violation of the strict standards that Neva has established for its products.  While Euro Import strictly adheres to these protocols, Defendants do not.

66.     Deviation from acceptable handling methods causes irreversible damage to the product and may even result in it being unsafe for consumption.  As a result, the products that Defendants introduce into the stream of commerce are materially different from the genuine Neva products.

67.     **Diverted Products Are Not Kosher**.  Another critical difference between the genuine product destined for distribution in the United States and those diverted by Defendants is that the genuine products are kosher while the diverted products are not.

68.     The kosher status of genuine Neva products is essential to many consumers who are observant Jews.  Neva and Euro Import supply stores that sell genuine Neva products with Kosher certificates for inspection by consumers.

69.     Many consumers who purchase Neva products may check the status of the kosher certificate once and then rely on the reputation of stores that sell genuine Neva products to maintain the kosher status in the future when they return to purchase the same products.  Because genuine Neva products and those manufactured in Russia and diverted to the United States by Defendants are so similar, many consumers are confused as to the kosher status of the products.  They would have no reason to doubt the kosher status and would be tricked into thinking that they are buying kosher products when they, in fact, are not.

70.     Moreover, the sale of non-kosher products at kosher stores damages the reputation and kosher status of the stores that sell them.

71.     Therefore, Defendants have and continue to mislead and confuse consumers by attempting to pass diverted Neva products as genuine and in doing so continue to cause irreparable and monetary harm to Neva and Euro Import.

## FIRST CLAIM FOR RELIEF

### Federal Trademark Infringement
### 15 U.S.C. §1114(1) (Lanham Act Section 32)

72.     Plaintiffs incorporate each paragraph of this Complaint as if fully set forth herein.

73.     Neva is the owner of all right, title and, interest in and to the Neva Marks (as set forth above).

74.     Defendants, without authorization, have imported into the United States, and/or distributed and/or sold in the United States, and/or received in interstate commerce, diverted Neva goods featuring the Neva Marks, which products are materially different from the Neva goods authorized by Neva for sale in the United States. Such actions are likely to cause confusion, mistake, or deception as to the source of origin, sponsorship or approval of the diverted Neva goods in that purchasers and others in this judicial district and elsewhere in the United States are likely to believe Neva authorizes and controls the sale of Defendants' diverted Neva goods, or that Defendants are associated with or related to Neva or are authorized by Neva to sell Neva products in the United States.

75.     Defendants' acts have injured or are likely to injure Neva's image and reputation with consumers in this judicial district and elsewhere in the United States by creating confusion about, and/or dissatisfaction with, Neva products.

76.     Defendants' acts have injured or are likely to injure Neva's reputation in this judicial district and elsewhere in the United States by causing customer dissatisfaction, a

diminution of the value of the goodwill associated with the Neva Marks, and a loss of sales and/or market share to Neva's competition.

77.     Defendants' acts have been committed deliberately and willfully knowledge of Neva's exclusive rights and goodwill in the Neva's Marks, and with knowledge of the infringing nature of the marks when used in connection with the diverted Neva goods. Defendants' acts have also been committed with bad faith and the intent to cause confusion, or to cause mistake and/or to deceive.

78.     As a result of Defendants' trademark infringement, Neva has suffered and will continue to suffer substantial and irreparable injury, loss and damage to its rights in and to the Neva Marks, and damage to the goodwill associated therewith, for which it has no adequate remedy at law.

79.     If not restrained, Defendants will have unfairly derived and will continue to derive income, profits, and business opportunities as a result of their acts of infringement.

80.     As the acts alleged herein constitute infringement of the Neva Marks under 15 U.S.C. § 1114(1), and as Neva has no adequate remedy at law, Neva is entitled to injunctive relief as well as to Defendants' profits, Neva's damages, and other remedies provided by 15 U.S.C. §§ 1116, 1117 and 1118, and to reasonable attorneys' fees and prejudgment interest pursuant to 15 U.S.C. § 1117.

## SECOND CLAIM FOR RELIEF

**Federal Unfair Competition and False Advertisement**
**15 U.S.C. § 1125(a)(1)(A) and (a)(1)(B) (Lanham Act Section 43(a))**

81.     Plaintiffs incorporate each paragraph of this Complaint as if fully set forth herein.

82.     Defendants have, without authorization, imported into the United States and/or distributed and/or sold in the United States and/or received in interstate commerce, diverted Neva goods featuring the Neva Marks, which products are materially different from the Neva goods authorized by Neva for sale in the United States.  Such use is likely to cause confusion, or to cause mistake and/or to deceive as to the affiliation, connection or association of Defendants with Neva, and as to the origin, sponsorship or approval by Neva of Defendants' diverted Neva goods and the commercial activities related to Defendants' diverted Neva goods.

83.     Defendants' acts constitute a false representation and a false designation of origin in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A).

84.     Defendants have similarly violated 15 U.S.C. 1125(a)(1)(B) in that their activities in connection with importing and distributing diverted Neva goods misrepresents the nature, characteristics, qualities, and/or geographic origin of their goods, services, or commercial activities.

85.     Defendants' acts have been committed with knowledge of Neva and Euro Import's exclusive common law rights and goodwill in the Neva Marks, as well as with bad faith and the intent to cause confusion or mistake, and/or to deceive.

86.     Neva and Euro Import have suffered and, if Defendants are not enjoined, will continue to suffer great and irreparable injury, loss, and damage to their rights in and to the Neva Marks and to the goodwill associated therewith for which Neva and Euro Import have no adequate remedy at law.

87.     If not restrained, Defendants will have unfairly derived and will continue to derive income, profits, and business opportunities as a result of their acts of infringement.

88.     As the acts alleged herein violate Section 43(a) of the Lanham Act, 15 U.S.C. §

1125(a), and as Neva and Euro Import have no adequate remedy at law, Neva and Euro Import

are entitled to injunctive relief and to Defendants' profits, Neva and Euro Import's damages, and

other remedies provided by 15 U.S.C. §§ 1116, 1117 and 1118, and to reasonable attorneys' fees

and prejudgment interest pursuant to 15 U.S.C. § 1117.

## THIRD CLAIM FOR RELIEF

### Common Law Unfair Competition
### (By Neva and Euro Import Against all Defendants)

89.     Plaintiffs incorporate each paragraph of this Complaint as if fully set forth herein.

90.     Defendants' acts constitute an infringement of Neva's and Euro Import's

trademark rights in violation of common law, including the common law of the State of New

York and elsewhere.

91.     As a result of Defendants' acts, Neva and Euro Import have suffered and, if

Defendants are not enjoined, will continue to suffer great and irreparable injury, loss, and

damage to their rights in and to the Neva Marks, and to the goodwill associated therewith for

which Neva and Euro Import have no adequate remedy at law.

## FOURTH CLAIM FOR RELIEF

### Federal Trademark Dilution
### 15 U.S.C. § 1125(c) (Lanham Act Section 43(c))

92.     Plaintiffs incorporate each paragraph of this Complaint as if fully set forth herein.

93.     Neva Marks are famous and distinctive within the meaning of 15 U.S.C. §

1125(c).

94.     Neva Marks are widely recognized by the general consuming public of the United

States as a designation of source of Neva's goods, as distributed by Euro Import.

95.     Since the Neva Marks have become famous, Defendants have utilized marks that are likely to cause dilution by blurring and/or tarnishment of Neva's famous Neva Marks.

96.     Defendants' acts greatly and irreparably damage Neva and Euro Import and will continue to do so unless restrained by this Court. Therefore, Neva and Euro Import are without an adequate remedy at law and are entitled to, among other things, an order enjoining and restraining Defendants from selling diverted Neva goods.

## FIFTH CLAIM FOR RELIEF

### State Law Trademark Dilution

97.     Plaintiffs incorporate each paragraph of this Complaint as if fully set forth herein.

98.     Neva's Marks are distinctive under state law, including New York General Business Law § 360-l.

99.     Defendants' acts are likely to cause dilution by blurring and/or tarnishment, and damage the business reputation of Neva and Euro Import in violation of state law, including New York General Business Law § 360-l.

100.    Through their acts, Defendants have injured and are continuing to injure Neva and Euro Import's business reputation and/or have diluted and are continuing to dilute the distinctive quality of the Neva Marks, in violation of state law, including New York General Business Law § 360-l.

101.    Defendants' acts greatly and irreparably damage Neva and Euro Import and will continue to do so unless restrained by this Court. Therefore, Neva and Euro Import are without an adequate remedy at law and are entitled to, among other things, an order enjoining and restraining Defendants from selling diverted Neva goods.

## SIXTH CLAIM FOR RELIEF

### State Law Deceptive Business Practices

102.   Plaintiffs incorporate each paragraph of this Complaint as if fully set forth herein.

103.   Defendants' acts were consumer-oriented.

104.   Defendants' acts were materially misleading.

105.   Defendants' acts have caused and are continuing to cause injury to Neva and Euro Import in violation of state law, including New York General Business Law § 349.

106.   Defendants' acts greatly and irreparably damage Neva and Euro Import and will continue to do so unless restrained by this Court. Therefore, Neva and Euro Import are without an adequate remedy at law and are entitled to, among other things, an order enjoining and restraining Defendants from selling diverted Neva products.

## SEVENTH CLAIM FOR RELIEF

### Unjust Enrichment

107.   Plaintiffs incorporate each paragraph of this Complaint as if fully set forth herein.

108.   The Defendants made false representations and material omissions in connection with their sales of diverted Neva products bearing Neva Marks.

109.   As a result of these false representations and material omissions, Defendants wrongfully obtained a monetary benefit to which they were not legally entitled.

110.   Defendant benefitted as a result of the profits the Defendants reaped as a result of the diversion scheme.

111.   Defendants have no right to retain these unjust gains.

112.   If Defendants are permitted to keep this monetary benefit, it would be manifestly unjust.

113.    By selling diverted Neva products, in the United States, Defendants have been unjustly enriched at Neva and Euro Import's expense in violation of the common law of New York and elsewhere.

## EIGHTH CLAIM FOR RELIEF

**Importation of Goods Bearing Infringing Marks**
**15 U.S.C. § 1124**

114.    Plaintiffs incorporate each paragraph of this Complaint as if fully set forth herein.

115.    By illegally importing diverted Neva products from foreign countries with the intent of consumers into believing that the products are authorized for resale in the United States, Defendants have violated 15 U.S.C. § 1124.

116.    Plaintiffs have been, and continues to be, damaged by Defendants' activities and conduct. Defendants have profited thereby and, unless their conduct is enjoined, Plaintiffs' reputation and goodwill will continue to suffer irreparable injury that cannot adequately be calculated or compensated by money damages. Accordingly, Plaintiffs are entitled to injunctive relief under 15 U.S.C. § 1116.

## PRAYER FOR RELIEF

**WHEREFORE**, Neva and Euro Import demand judgment against all Defendants as follows:

(a) an order entering judgment in favor of Plaintiffs against Defendants, jointly and severally;

(b) an order temporarily restraining, and preliminarily and permanently enjoining Defendants from engaging in the unlawful behavior described above;

(c) an order awarding Plaintiffs damages in an amount to be determined;

(d) an order awarding Plaintiffs trebling of damages;

(e) an order awarding Plaintiffs pre-judgment and post-judgment interest;

(f) an order awarding Plaintiffs punitive damages;

(g) an order awarding Plaintiffs reasonable attorneys' fees and other costs; and

(h) for such additional relief as the Court finds just, equitable, and appropriate.


**JURY DEMAND**

Plaintiffs hereby request a jury trial on all claims and issues asserted in the Complaint.

Dated: New York, New York
        November 30, 2015


                              Yours, etc.
                              SAUCHIK & GIYAUR, P.C.

                    By:  /s/
                         Alec Sauchik (AS-5002)
                         *Attorneys for Plaintiffs,*
                         *Neva and Euro Import*
                         17 Battery Place, Suite 305
                         New York, New York 10004
                         (212) 668-0200
                         asauchik@mdrxlaw.com