UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

EURO IMPORT, INC., EURO IMPORT DISTRIBUTIONS, INC., JSC CONFECTIONARY FACTORY "NEVA",

*Plaintiffs,*

- against -

ROYAL SWEET BAKERY, INC. and MIKHAIL YUSIM and JOHN DOE 1-10

*Defendants.*

Civil Action No.: 15-cv-6817 (JG)(LB)

DECLARATION OF LEONID NAZAROV IN SUPPORT OF MOTION FOR A PRELIMINARY INJUNCTION AND TEMPORARY RESTRAINING ORDER

I, Leonid Nazarov, pursuant to 28 U.S.C. § 1746, declare as follows:

1. I am a commercial director of Confectionary Factory "Neva" ("Neva"), one of the plaintiffs in this matter. I am in charge of supervising manufacturing, marketing and export operations of Neva. As such, I am fully familiar with the facts stated below.

2. I submit this declaration in support of the plaintiffs' motion for a preliminary injunction, temporary restraining order and expedited discovery.

3. Neva is a private corporation organized and existing pursuant to the laws of the Russian Federation, with its principal place of business in St. Petersburg, Russia.

4. Neva is in the business of manufacturing confectionary goods, including a certain type of marshmallows known in the former Soviet Union and elsewhere, including the United States, as "Zephyr", as well as various fruit candies, jelly candies, pastille, and other confectionary goods.

5. Since its establishment in 2005, Neva has been one of the largest and best-known manufacturers of such products in Russia.

S&G/537/07/0039476

- 1 -

6. Neva uses only natural ingredients of the highest quality in its manufacturing processes. The company employs specialists highly trained in the Russian and European confectionary traditions who constantly develop and perfect world-class confectionary products.

7. Neva manufactures products for various markets, including the domestic Russian market, as well as for export to the United States and other foreign countries.

8. Due to its high number of immigrants from the former Soviet Union, the United States market is a very important export market for Neva. A significant portion Neva's output is intended for export to the United States.

9. Because of specific requirements of the United States market, Neva has developed a line of products specifically designed for this market.

10. Specifically, our production lines where we manufacture products for the United States market are certified as kosher. Moreover, we use only kosher ingredients in the manufacturing of these products and avoid using, or contaminating our products with, animal-derived gelatin.

11. Neva has applied for and received kosher certifications from one of the world's preeminent kosher certification agency, Orthodox Union, for most of the products intended for export into the United States. The Orthodox Union's database, accessible on https://oukosher.org/product-search, confirms the certification of Neva products as kosher. *See also,* **Exhibit "A"**. The agency certifies not only the ingredients used in these products but also the manufacturing facilities and processes. Each of Neva's products intended for export into the United States has a kosher certificate that is available at Euro Import's office.

12. We also employ stricter quality control standards at our production lines where we manufacture products for the U.S. market compared to those where we manufacture products

for domestic consumption in Russia. We make sure that the processes and ingredients we use comply with tough U.S. standards applicable to food products.

13. Additionally, our manufacturing facilities have been certified by, and registered with, the United States Food and Drug Administration (the "FDA").

14. Since at least 2010, Neva has worked exclusively with one company, Euro Import, Inc. ("Euro Import") in the United States. Euro Import is our exclusive importer and distributor in the United States and Canada.

15. Neva and Euro Import have long maintained this exclusive distributorship relationship. Pursuant to the terms of the agreement, Euro Import is the only company we sell our products intended for export into the United States.

16. We sell products for markets other than the United States market through various distributors in Russia and elsewhere. To the extent that other products are sold in the United States market that have not first passed through Euro Import, such products are either counterfeit or diverted from other sources.

17. Our cooperation with Euro Import is so fundamental to the success of our products in the U.S. that we print, on every package of the products intended for sale in the United States, that they were imported and distributed exclusively by Euro Import.

18. The products that are not intended for sale in the United States all bear a legend "Not for sale in the United States".

19. Euro Import adheres to a long list of specifications that we deem instrumental to our success in the United States. Euro Import has extensive experience and expertise in marketing products such as ours, and we deem the cooperation with this company extremely important.

20. Euro Import is instrumental in Neva's efforts to develop and improve products intended for the U.S. market. Euro Import and Neva jointly develop packaging for U.S.-bound products, and work together in numerous other ways to increase our U.S. market penetration and the maintain preeminent status of our products in this market.

21. In cooperation with Neva, Euro Import participates in numerous exhibitions, presentations, and sample sales. Euro Import develops, together with Neva, marketing materials, cultivates relationships with local stores and their proprietors, and advertising Neva products on radio, television, online, in print and elsewhere.

22. As a result of these marketing efforts, the sales of our products in the United States were approximately 200 tons annually, which comprises a significant amount of our total production.

23. Neva is the owner of several of U.S. Trademarks including, among others, the following (collectively referred to as "Neva's Marks"):

   a. Neva's **ЛЯНЕЖ** trademark was registered on the Principal Register of the United States Patent and Trademark Office on January 28, 2014, as U.S. Registration Number 4,473,080. A copy of Neva's Registration Certificate Number 4,473,080 is attached hereto as part of **Exhibit "B"**.

b. Neva's  trademark was registered on the Principal Register of the United States Patent and Trademark Office on December 31, 2013, as U.S. Registration Number 4,457,040. A copy of Neva's Registration Certificate Number 4,457,040 is attached hereto as part of **Exhibit "B"**.

c. Neva has applied for the registration of Lyanezh trademark with the United States Patent and Trademark Office on July 2, 2014. The application has been assigned serial number 86327566.

24. Neva has used Neva Marks and other distinct names and features in commerce in the United States for at least five years. Neva has also registered numerous trademarks worldwide.

25. Euro Import is also the exclusive licensee of Neva Marks in the United States.

26. Neva enjoys a worldwide reputation for quality, great taste, and attractive design. Through Euro Import's efforts, it enjoys a particularly strong reputation in the United States among immigrants from the former Soviet Union and Eastern European countries. Neva develops, manufactures, and markets products that are familiar to these immigrants by catering to their preferences and tastes that many of them have acquired since early childhood.

27. Euro Import has invested heavily in promoting Neva products in the United States. Among other things, Euro Import emphasizes the fact that Neva's products are kosher, which is a major selling point in the United States.

S&G/537/07/0039476

- 5 -

28. Euro Import routinely studies the tastes of United States' consumers and works with Neva to tailor their products accordingly, participates in numerous exhibitions, presentations, sample sales, develops, together with Neva, marketing materials, cultivates relationships with local stores and their proprietors, and advertising Neva products on radio, television, online, in print, and elsewhere.

29. Neva products are the highest-grossing products in Euro Import's inventory. Due to the high importance of Neva products to Euro Import's business, Euro Import has devoted all its attention to ensure that Neva products are consistently number-one sellers among similarly-situated products.

30. Euro Import's efforts have paid off. Neva's products are consistently the number one choice among consumers who are looking to purchase "zephyr"-type products in U.S. stores. Consumers know that when they choose Neva products, they can be assured they are buying the highest-quality marshmallows and sweets.

31. Moreover, Euro Import is critical in Neva's efforts to ensure and maintain the quality of our products.

32. Due to the perishable nature of Neva products, it is essential that such products are transported to the United States and stored, after leaving the factory, under very specific temperature- and humidity-controlled conditions.

33. Under its agreement with Neva, Euro Import is in charge of shipping and importing Neva products into the United States, storage of the products at its warehouse, and transporting them to hundreds of stores that sell them. We know that Euro Import adheres to the highest standards developed by Neva that ensure that the products are not exposed to extreme heat and humidity levels, that they have not expired, and are safe for consumers.

S&G/537/07/0039476

- 6 -

34. Euro Import ensures that Neva products comply at all times with all applicable laws and regulations applicable to food products of this type.

35. Moreover, Euro Import handles customer relationships for Neva in the United States. Euro Import ensures the effectiveness of recalls of Neva products, answers customer questions and addresses their concerns, accepts suggestions from customers and transmits them to Neva, and replaces products for consumers in the rare instances when products do not meet their expectations.

36. Recently, Neva and Euro Import became aware that Defendants and several other unknown companies, had purchased Neva's products intended for domestic consumption in Russia, placed counterfeit labels falsely stating that such products were imported by and through Euro Import, and begun offering such products for sale in the United States.

37. Defendants place counterfeit labels on diverted products. These labels were not placed on the products at Neva factory, but are rather added by Defendants after the product has already been sold to distributors who are not authorized to export to the United States. In doing so, they obscure the legend "Not for sale in the United States" that appears on these products, as well as the real expiration dates. The labels have not been approved by Neva.

38. The products that Defendants are offering for sale are materially different from the ones that we manufacture for, and Euro Import imports into, the United States.

39. These products are not kosher, are labeled differently, are made using different ingredients, and have not undergone the same quality control checks at the factory.

40. Moreover, these products were obtained from distributors not registered with the United States Food and Drug Administration ("FDA"). Upon information and belief, these

products were imported into the United States without prior FDA notification. As such, their importation into the United States is illegal.

41. Moreover, upon information and belief, Defendants are attempting to conceal the true expiration dates of the products by placing labels on such products with modified expiration dates.

42. When consumers encounter diverted products in stores, they have no idea that the products they are buying are actually illegally diverted international products. The use of counterfeit labels falsely stating that the products were imported by Euro Import is designed to conceal the material differences between the genuine products and diverted international products.

43. The concerns over safety of diverted Neva products can only be alleviated by stopping the unlawful diversion of international Neva products into the United States.

44. For the reasons stated in the memorandum of law and other supporting papers, the Court should grant the motion for a preliminary injunction and enter a temporary restraining order. Plaintiffs are likely to prevail on the merits of their claims, they will suffer an irreparable injury to their reputation and goodwill that cannot be compensated by monetary damages, and the equities clearly tip in Plaintiffs' favor.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on November 30, 2015

By: /s/ L. Nazarov
Leonid Nazarov